# EXHIBIT B

AGREEMENT

BETWEEN

UNION LOCAL NO. #70
UNITED UNION OF ROOFERS, WATERPROOFERS
&
ALLIED WORKERS
AND

JUNE 1, 2006
Through
MAY 31, 2009

# INDEX

| | | |
|---|---|---|
| ARTICLE I | Recognition, Union Shop, Dues, Initiation | 3 |
| ARTICLE II | Jurisdictional Rules | 3 |
| ARTICLE III | Territorial Jurisdiction | 6 |
| ARTICLE IV | Hiring | 6 |
| ARTICLE V | Hours | 8 |
| ARTICLE VI | Shift Work | 8 |
| ARTICLE VII | Pay Day | 9 |
| ARTICLE VIII | Working Rules | 10 |
| ARTICLE IX | Kettle men | 11 |
| ARTICLE X | Stewards | 11 |
| ARTICLE XI | Employer Responsibilities | 12 |
| ARTICLE XII | Superintendents | 13 |
| ARTICLE XIII | Foremen | 13 |
| ARTICLE XIV | Travel | 14 |
| ARTICLE XV | Joint Adjustment Board and Grievance Arbitration Procedure | 15 |
| ARTICLE XVI | Strikes and Lockouts | 15 |
| ARTICLE XVII | Discharge or Lay-Off | 16 |
| ARTICLE XVIII | General Provisions | 17 |
| ARTICLE XIX | Apprenticeship | 17 |
| ARTICLE XX | Piece-Work, Tools, Crew Size | 18 |
| ARTICLE XXI | Mechanical Equipment | 18 |
| ARTICLE XXII | Disclaimer of Union Liability | 19 |
| ARTICLE XXIII | Cash Performance Bond | 19 |
| ARTICLE XXIV | Vacation Fund | 21 |
| ARTICLE XXV | Insurance Fund | 22 |
| ARTICLE XXVI | Pension Fund | 22 |
| ARTICLE XXVII | Apprentice Fund | 22 |
| ARTICLE XXVIII | Wage Schedules | (INSERTED) |
| ARTICLE XXIX | Overtime, Holidays, Etc. | 23 |
| ARTICLE XXX | Check-Off Dues | 24 |
| ARTICLE XXXI | Miscellaneous | 25 |
| ARTICLE XXXII | Favored Nations | 25 |
| ARTICLE XXXIII | Deklewa Waiver | 25 |
| ARTICLE XXXIV | Termination of Agreement | 25 |
| ARTICLE XXXV | Signatures | 26 |

THIS AGREEMENT made and entered into this 1st DAY OF JUNE 2006 by and between hereinafter termed the EMPLOYER; and the UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS LOCAL NO. #70 hereinafter called the UNION.

WHEREAS, both parties are desirous of preventing strikes and lock-outs and other cessation's of work and employment: and of maintaining a uniform wage scale, working conditions and hours of employees of the employer: and of facilitating peaceful adjustment of all grievances which may arise between the Employer and its employees: and of promoting and improving peaceful industrial and economic relations between the parties. Now therefore, the parties hereto agree as follows:

# ARTICLE I
## RECOGNITION, UNION SHOP, DUES, INITIATION

**SECTION 1:** The Employer voluntarily recognizes that the Union represents the majority of its employees covered by this Agreement.

**SECTION 2:** All present employees who are members of the Union on the effective date of this subsection or or on the date of execution of this AGREEMENT, whichever is the later, shall remain members of the Union; and all employees who are hired hereafter shall become and remain members in good standing of the Union as a condition of the SEVENTH (7th) day following the date of their employment or the effective date of this AGREEMENT whichever is later.

**SECTION 3:** The Employer agrees to deduct from pay of each employee all dues and/or initiation fees of Union and pay such amount deducted to the Union for each and every employee provided however, that the Union presents to the Employer authorizations signed by such employee allowing such deductions and payments to the Union aforesaid. The Employer is responsible for submitting said authorizations for employees that are hired directly by the Employer.

# ARTICLE II
## JURISDICTIONAL RULES

**SECTION 1:** The Employer agrees to respect the jurisdictional rules of he Union and shall not direct, require or allow its employees (not in the bargaining unit) or any persons other than the employees in the bargaining unit here involved to perform work which is recognized as the work of the employees in said units.

**SECTION 2:** This Union shall have jurisdiction over all skilled roofers, damp and waterproofers (including apprentices and probationary apprentices) in the application and/or removal of the following materials:

    **A.** The removal and/or application of slate, tile asbestos, cement, metal, asphalt shingles and all substitute materials when used for roofing, applied in any manner including all flashing required and laying of felt or paper beneath this work.

3

**B.** The handling, removal, and/or application in any manner including but not limited to mop-brushed-squeegee-spray-blown-etc., of any and all types of composition roofing waterproofing and/or damp proofing applied to the inside or outside of buildings of buildings: including but not limited to any and all of the following types of materials or any substitute materials designed to contain or repulse moisture in any form.

**C.** Slate and Tile roofers shall include the following types of materials:

1. All slate where used for roofing of any size, shape or color including flat or promenade slate with necessary metal flashing to make water-tight.

2. All tile where used for roofing of any size, shape or color and in any manner laid including flat or promenade tile with necessary metal flashing to make weather tight.

3. All asbestos shingles where used for roofing of any size, shape or color and in any manner laid with necessary metal flashing to make water-tight..

4. All cementing in, on or around the said slate or tile roof.

5. All laying of felt or paper beneath the above mentioned work.

6. All dressing, punching and cutting of all roof slate or tile.

7. All operation of slate cutting or punching machinery.

8. All substitute material taking the place of slate or tile as asbestos, slate or tile, cement or composition tile excepting shingles of wood and metal tile.

9. All removal of slate or tile roofing as defined above where the same is to be related.

**D.** Composition Roofers shall include the following types of materials:

1. All forms of plastic, slag, gravel roofing

2. All kinds of asphalt and composition roofing.

3. All rock asphalt and composition roofing.

4. All rock asphalt mastic when used for damp and waterproofing.

5. All prepared paper roofing.

6. All compressed paper, chemically prepared paper, and burlap when used for roofing or damp and waterproofing purposes with or without coating.

7. All damp resisting preparations when applied with a mop, three-knot brush, roller, swab, or spray system in or outside the building.

8    All damp course, sheeting or coating on all foundation work.

9.    All tarred floors.

10.    All laying of Tile or brick when laid in pitch, tar, asphalt mastic, marmoliany or any form of bitumen.

11.    All forms of insulation used as part of or in connection with roofing, waterproofing, or damp-proofing.

E.   1.    All forms of elastomeric and/or plastic (elasto-plastic) roofing systems both sheet and liquid applied whether single-ply or multi-ply. These shall include but not be limited to:
   a.    PVC (polyvinyl chloride systems)
   b.    Butyl Rubber
   c.    EPDM (ethylene propylene dienenomer)
   d.    PIB (polyisobutlene)
   e.    CPE (clorosulfonated polyethylene)
   f.    ECB (ethylene-copolymer-bitumen and anthracite dusts)
   g.    Modified Bitumens

2.    All insulations applied with the above systems whether laid dry, mechanically fastened, or attached with adhesives.

3.    All types of aggregates blocks or stones used to ballistic these elasto-plastic systems.

4.    All types of aggregates blocks or stones used as a ballast for Inverted Roofing Membrane Assembly (IRMA) roofs or roofs of similar construction where the insulation is laid over the roofing membrane.

5.    All sealing and caulking of seams and joints on these elasto-plastic systems to ensure water tightness.

6.    All liquid-type elasto-plastic preparations for roofing, damp or waterproofing when applied with a squeegee, trowel, roller and spray equipment whether applied inside or outside of a building.

7.    All sheet-type elasto-plastic systems whether single or multi-ply for waterproofing either inside or outside or a building.

8.    All priming of surfaces to be roofed, damp or waterproofed whether done by roller, mop, swab, three-knot brush, or spray system.

9.    All types of pre-formed panels used in waterproofing (Volclay, etc.)

10. All applications of protection boards to prevent damage to the damp-proofing or waterproofing membrane by other crafts or during bask-filling operations.

11. All handling of roofing, damp and waterproofing materials.

12. All hoisting and storing of roofing, damp and waterproofing materials.

13. All types of spray-in-place foams such as urethane or polyurethane, and the coatings that are applied over them.

14. All types of re-storants, coatings, mastic and toppings when used for roof membrane maintenance and repairs.

F. All tear off and/or removal of any type of roofing, all spudding, sweeping, vacuuming and/or cleanup of any and all areas of any type where a roof is to be re-laid, or any materials and operation of equipment such as kettles, pumps, tankers, or systems coming under the scope of jurisdiction as outlined in ARTICLE II is to be applied.

# ARTICLE III
# TERRITORIAL JURISDICTION

**SECTION 1**     The following is the Territorial Jurisdiction of Local #70 for the purpose of this AGREEMENT. WASHTENAW, LIVINGSTON, JACKSON AND HILLSDALE COUNTIES, MICHIGAN.

# ARTICLE IV
# HIRING

**SECTION 1**     In the employment of Journeymen roofers and apprentices for all work covered by this **AGREEMENT** the following provision shall govern:

A. The Union shall establish and maintain open and non-discriminatory employment lists of qualified Journeymen roofers, registered and probationary apprentices who make application for a place on the list.

B. Whenever an Employer desires to employ Journeymen roofers or apprentices it shall call upon the Union stating the number required. The Employer shall give the Union at least FOURTY-EIGHT (48) hours (weekends excluded) to secure the roofers needed. The roofers or apprentices must receive a referral signed by the Business Manager and the worker before starting work.

**C.** Whenever after reasonable notice FORTY-EIGHT (48) hours the Union is unable to furnish a sufficient number of Journeymen roofers or apprentices the Employer may secure them from other sources. The Employer will notify the Union within TWENTY-FOUR (24) hours name, ss# and address of any employee hired.

**D.** The Union will furnish each Journeyman roofer or apprentice entered on the list to the Employer in the following order:

    **1.** Journeyman roofers and apprentices who have been employed by the Employer previously and are now available for employment.

    **2.** Journeyman roofers and apprentices whose names are entered on the list for employment.

**SECTION 2**    The Employer agrees to pay FOUR (4) hours pay for each Journeyman roofer or apprentice it requests from the Union but does not place or hire, whether permitting.

**SECTION 3**    The Employer shall place in a conspicuous place a copy of this AGREEMENT outlining all provisions relating to the functions of the hiring arrangements and the safeguards essential to the legality of an exclusive hiring agreement.

**SECTION 4**    When a non-local contractor who is a co-signer to this AGREEMENT works in the jurisdiction of the UNION it shall notify the UNION by telephone or in writing TWO WEEKS PRIOR to the start of the job (INCLUDING SET UP OF THE JOB) of their intention to conduct work within the jurisdiction of Local 70. On jobs that require mandatory training or testing, the contractor must provide the Union with (4) FOUR weeks notice prior to starting the job. Each non-local contractor agrees to abide by the majority ratio rules on any job. If the non-local contractor fails to give the Union FORTY-EIGHT hours advance notice then any loss of work hours calculated under the majority ratio rule for members of the Union shall be made up by either: (1) having Local members working extra hours: or (2) having additional Local members manning the job. All mandatory training including MUST is to be paid for by the contractor who has been awarded the work. Mandatory drug testing will be paid by the contractor and the roofer who is being tested shall be paid his full hourly and fringe benefit rate for all time spent for such testing including travel time.

**SECTION 5**    The Union agrees to furnish at all times to the Employer duly qualified Journeymen roofers, registered apprentices and probationary in sufficient numbers to properly execute the Employers work in the manner and under the conditions specified in this AGREEMENT. It is understood that the Union's responsibility hereunder is limited to referring workmen who are adequately skilled in the trade, and the Employer agrees that Union will not be held responsible for the acts, tortuous or otherwise, or failure to act of those if refers.

# ARTICLE V
## HOURS

**SECTION 1**    The regular working day shall consist of EIGHT (8) hour labor between 8a.m. and 4:30 p.m...
The regular work week shall consist of FIVE (5) consecutive EIGHT (8) hour days labor,
beginning with Monday and ending with Friday. All full-time or part-time labor performed
during the hours specified herein shall be recognized as regular time and paid for at the regular
hourly rate specified in this agreement. Crews may by majority vote agree to work four
ten-hour days. Crews who were to work FOUR (4) ten-hour days shall have Friday as a make
up day.

**SECTION 2**    To avoid adverse weather conditions the Employer and the employees may agree to change
starting time in the morning.

**SECTION 3**    On approval of the Union, special permission may be granted to stagger starting time, provided
TWO (2) distinct crews are used and each crew is under the direction of its own foreman.
Starting time shall be between 5:00 a.m. and 8:00 a.m...

# ARTICLE VI
## SHIFT WORK

**SECTION 1**    On jobs where it is necessary for TWO (2) shifts to operate, the following schedule shall apply:

    **A.**    The first shift must be the day shift, with the Regular Rate of pay. Between October 1st
and April 30th, the regular working hours of 8:00 a.m. to 4:30 p.m. shall be in effect.

    **B.**    The second shift will start at 4:30 p.m. and end at 12:30 a.m. with One Half (1/2)
hour for lunch. The second shift employees shall receive TWENTY-FIVE CENTS
($ .25) per hour shift premium.

    **C.**    Between May 1st through September 30th, crew may start as early as 5:00 a.m.. The second
shift shall start at the end of the first shift's established quitting time. The second shift
employees shall receive a TWENTY-FIVE CENTS ($.25) per hour shift premium.

**SECTION 2**    On jobs requiring THREE (3) shifts, the following schedule shall apply:

    **SHIFT NO. 1**    8:00 a.m. -4:30 p.m.
30 minutes paid lunch. Regular Rate of pay.

    **SHIFT NO. 2**    4:00 p.m. – 12:00 Midnight
30 minutes paid lunch, with TWENTY-FIVE CENTS ($ .25) per hour shift premium.

    **SHIFT NO. 3**    12:00 Midnight – 8:00 a.m.
30 minutes paid lunch, with FIFTY CENTS ($.50) per hour shift premium.

**SECTION 3**    When shift work is required, the minimum crew per shift consists of THREE (3) men composed
of a foreman and at least TWO (2) journeymen.

**SECTION 4**     No employees shall work more than EIGHT (8) hours within a TWENTY-FOUR (24) hour period (unless the crew has agreed by majority vote to work four Ten hour days) in which case no more than TEN (10) hours may be worked before the overtime rate is paid, unless overtime rate is paid.

**SECTION 5**     All Federal, State and Local wage and hour rules and regulations shall apply to this AGREEMENT and shall be in addition to the provisions herein.

## ARTICLE VII
## PAY DAY

**SECTION 1**     Wage at the established rate as specified herein shall be paid in cash or by check on the regular established weekly pay day; except that when an employee is either discharged or laid off: the Employer shall have TWENTY-FOUR (24) hours from payday (as reported to the Union) to mail or pay in person the employees discharged or lay off pay. If payment is made after the TWENTY-FOUR (24) hour period or if the employee is required to report to the Employer's office. The Employer shall pay the employee an additional TWO (2) hours pay. If the employee is required to report to the Employer's office and the Employer's Office is outside the Unions territorial jurisdiction the Employer shall pay the employee an additional FOUR (4) hour pay to compensate employee for his travel.

**SECTION 2**     All Employers covered by this AGREEMENT shall state their established payday to the Union Business Office. In the event that a pay day falls on a legal holiday, or the day celebrated as such:

    **A.**     Foremen shall receive all paychecks on the established payday on the job and distribute them prior to the established quitting time.

    **B.**     If the Employer fails to have the checks o the job by the end of the working payday, the employees shall be paid for all the time waiting for same.

**SECTION 3**     If bad weather stops work prior to the end of the working pay day and the checks are not on the job, and the workers are requested to go to the Employer's Office that day to get them, they shall be paid an additional TWO (2) hours pay if for local Employer, FOUR (4) additional hours pay if the office is outside the jurisdiction as called for in SECTION I of this ARTICLE.

**SECTION 4**     The Employer shall furnish each employee with an itemized check stub or voucher, showing the total hours worked, wage rate, authorized deductions, premium time hours (overtime) and the listing of all other expenses.

**SECTION 5**     The Business Manager shall be permitted to examine any employee's pay check at any time to assure himself that the proper wage rate is being paid, especially for overtime hours. If in his belief, the employee is not receiving the proper wage rate for the hours worked he shall demand that the employee involved appear before the Executive Board of this Union and that he bring his pay stub.

**SECTION 6**     The Business Manager shall notify the Labor Board of any irregularities found by him in any overtime not accounted for on the check stub, also the wage rate being paid the employee and/or employees.

## ARTICLE VIII
## WORKING RULES

**SECTION 1**  When a non-local contractor who is a co-signer to this AGREEMENT works in the jurisdiction of the Union, it shall notify the Union by telephone or in writing TWO WEEKS prior to the start of the job (INCLUDING SET UP OF THE JOB) of their intention to conduct work within the jurisdiction of Local 70 and within FORTY-EIGHT (48) hours (weekends excluded) prior to ANY work being performed on the job. Each non-local contractor agrees to abide by the majority ratio rules on any job. If the non-local contractor fails to give the Union FORTY-EIGHT (48) hours advance notice, then any loss of work hours calculated under the majority ratio rule for members of the Union shall be made up by either:
(1) having Local members working extra hours: or
(2) having additional Local members manning the job. The parties further agree that any contractor performing work under this AGREEMENT and working in a sister locals jurisdiction that has wages and/or fringes higher than those contained in this collective bargaining agreement such higher wages and/or fringes shall be paid.

**SECTION 2**  On any job within the Unions jurisdiction performed by a non-local contractor, one of the journeyman sent to the job as referred to above shall be appointed as foreman (to represent the Union members on the job). The appointed foreman will remain as part of the crew necessary to finish the job, and he shall receive foreman wages.

**SECTION 3**  All members of the United Union of Roofers, Waterproofers and Allied Workers Association, of which Union Local 70 is a part, shall carry on their person an official receipt covering the current month as a condition of employment in the jurisdiction. Any said employee who fails to produce the current official receipt within TWO (2) days will be removed from any job in our territory.

**SECTION 4**  Non-members and/or applicant members shall also carry on their person an official receipt dated dated from the last payroll deduction.

**SECTION 5**  It is stipulated and agreed that the Employer, upon official notice from the Business Manager of the Union, may remove any employee who is in violation of SECTION 4 and 5 above, so that no stoppage in work will be necessary in order to obtain compliance.

**SECTION 6**  Union agrees to furnish each member with a copy of this AGREEMENT, and also to furnish a copy of this AGREEMENT for the visiting foreman from each non-local contractor who becomes signatory hereto by Letter of Assent. Each non-local contractor shall post a copy of this AGREEMENT as a notice on its bulletin board. All contractors who become signatory hereto by letter of assent shall also receive a copy.

**SECTION 7**  All visiting foreman of non-local contractors are required to report in person or by phone to our Union Office, before starting work and to check on his workers clearance card.
The Local 70 phone # is (517) 548-6554.

**SECTION 8**  Under no circumstances will a member of this Union be permitted to work for less than the minimum scale of wages as established in the wage schedule (ARTICLE XXVIII).

10

**A.** It is hereby stipulated and fully agreed that under no circumstances will any member of the Union be permitted to do any type of work in direct competition with any signatory contractor to this AGREEMENT.

**B.** Violators of ARTICLE VIII, SECTION 8, PARAGRAPH A shall be brought before the Executive Board for trial on these violations. Minimum fine for persons found guilty of these violations shall be FIVE HUNDRED DOLLARS ($500.00).

**SECTION 9** On jobs by our outside area contractors, their foreman shall be regarded as their local representative and in charge of the job.

**A.** Both he and his Employer shall abide by the choice of and/or removal of the foreman and/or steward selected to represent this Union. The appointed Foreman will be a working foreman in accordance with this AGREEMENT in every way: but when there are at least EIGHT (8) employees on the job from this Union our foreman ceases to be a working foreman.

**B.** If the contractors are assessed a MIOSHA minor violation due Union member's disregard for personal safety, the members will be brought before the Executive Board who shall have the authority to impose a fine not to exceed fine imposed by MIOSHA. It is understood, however that this Union shall assume no responsibility to insure compliance with MIOSHA regulations.

# ARTICLE IX
## KETTLEMEN

**SECTION 1** Kettlemen may start up to TWO (2) hours earlier than the agreed starting time.

**A.** No inexperienced employee shall be permitted to operate a kettle or tanker in the jurisdiction of the Union, unless accompanied by a journeymen kettleman.

**SECTION 2** Both the employer and this Union agrees to comply with all Federal, State, City and County Regulations regarding construction safety, inexperienced operators, unattended kettles and related equipment. It is understood however, that it shall be the responsibility of the Employer to insure compliance with all governmental and contractual standards.

**SECTION 3** The minimum rate of pay for a Kettle Operations shall be FIFTH (5) class pay.

# ARTICLE X
## STEWARDS

**SECTION 1** The Employer agrees to permit the Union to select from the men on any job one journeyman to act as steward to look after the interests of the Union. The steward is to be elected by the journeyman on the job, including the foreman.

**A.** The Union through its Business Manager, reserves the right to relieve any steward from from his duties and appoint another in his/or her place when he deems it to be in the best interest of the Union.

**SECTION 2**   **A.** The steward shall be a working journeyman, and none of his responsibilities to the Union shall interfere with the proper performance of his/her work under the direction of the foreman.

**B.** He shall not be assigned to duties, which will not allow him to consult with the foreman and report violations of the safety requirements.

**C.** If the foreman and the steward cannot agree on what is unsafe equipment or unsafe working conditions, or if having agreed, action to correct same is not taken by the foreman or Employer, the steward must immediately make a report to the Union. It is understood however, that it shall be the responsibility of the Employer to insure compliance with all governmental contractual safety standards.

**D.** The Employer agrees that the steward shall not be discriminated against for performing his duties as a steward.

**SECTION 3**   The Employer agrees that it shall not lay-off the steward until the job is completed.

**SECTION 4**   The steward shall check the foreman's time book at the end of the working day to see if the men are properly accounted for.


# ARTICLE XI
# EMPLOYER RESPONSIBILITIES

**SECTION 1**   **A.** The Employer agrees that it will not perform work within the geographical jurisdiction of the Union through or by another firm, company, co-partnership, corporation or joint venture controlled by the Employer for the purpose of evading any of the provisions of this AGREEMENT.

**B.** If the Union, feels that an employer is attempting to evade any of the provisions of this it shall have the right to fully investigate the matter to include a full disclosure audit. If the Union based upon evidence produced by its investigation, reasonably determines that the Employer's actions are for the purpose of evading any of the provisions of this AGREEMENT, the Union shall on FORTY-EIGHT (48) hours written notice have the right to strike that contractor. A contractor who knowingly and willfully violates this AGREEMENT to evade proper payment to the Union and it's funds shall (insert wording) **pay a penalty for willful evasion. **

**SECTION 2**   The Employer hereby agrees that only one owner, partnership owner, corporation officer, closed family stockholder, or cooperative member may perform any manual roofing work on any job covered under this AGREEMENT.

**SECTION 3**    This AGREEMENT shall be binding upon the Employer and its successors and assigns , and the Union and its successors and assigns.

**SECTION 4**    The Employer must deposit with the Union a certificate to show that the Employer currently carries state Compensation Insurance or Compensation Insurance, and that it is currently covered under under the Michigan Employment Security Act. In addition, each Employer shall provide the Union with its social security identification number and any license numbers required by City, County or State laws. The information called for in this SECTION of the AGREEMENT shall be attached to this AGREEMENT. The Employer must keep the insurance required herein and the proof of insurance certificates current. The Union may demand to see it upon TWENTY-FOUR (24) hours notice.

## ARTICLE XII
## SUPERINTENDENTS

**SECTION 1**    **A.**    Superintendent shall be defined as any employee who instructs, places and/or relays Employer's instructions to foreman or other employees covered by this AGREEMENT.

                 **B.**    Superintendents are employees who are authorized to hire, lay-off, discharge and/or contact the Union for placement of their members.

**SECTION 2**    The Employer agrees that a superintendent shall be allowed to instruct employees on the job, and agrees that no superintendent will be permitted to work in competition with a member of the Union.

**SECTION 3**    The Employer, when requested by the Union, will state in writing all employees classified as superintendents.

**SECTION 4**    The Employer agrees that the hours worked by the Union members classified as superintendents may be contributed for the funds included in this AGREEMENT.

**SECTION 5**    Superintendents shall be allowed to make emergency repairs, provided, however not hot bitumens are used.

## ARTICLE XIII
## FOREMAN

**SECTION 1**    Employer agrees that whenever TWO (2) or more men are used on a job covered by this AGREEMENT, a journeyman roofer shall be designated as a working foreman and shall be paid the foreman's rate of pay.

**SECTION 2**    The working foreman shall be the agent of the Employer and have complete charge of all men under him, and shall see that all management instructions are carried out, providing said instructions do not conflict with any provisional of this AGREEMENT.

**SECTION 3**    The foreman shall receive all pay checks on the established and announce pay day on the job and distribute them prior to the established quitting time.

**A.** The foreman, on behalf of the Employer shall see that members properly and satisfactorily execute and complete their work. He shall not have the authority to hire or discharge on his own violation, but may have the authority to appropriately discipline.

**B.** If in the foreman's opinion, a member's work or conduct requires his discharge, the foreman shall consult with management and carry out their instructions.

## ARTICLE XIV
## TRAVEL EXPENSES AND SUBSISTENCE PAY

**SECTION 1** TRAVEL PAY SHALL BE PAID AS FOLLOWS: The free zone shall have a radius of FIFTY-FIVE (55) miles from the intersection of I-96 and U.S. 23 located at Brighton, Michigan. Zone one- a maximum of SIXTY-FIVE (65) miles with travel expenses of TWENTY-FOUR DOLLARS AND NINETY-SEVEN CENTS ($24.97). If employees are told to report to a job located between FIFTY-FIVE (55) and SIXTY-FIVE (65) miles and they do not work they will be paid TWENTY-FIVE DOLLARS ($25.00) show up time. If adverse weather prohibits the start of work on jobs located in zone one travel expenses will not be paid unless the employee is instructed to go to the job, by the employer or his representative.

**SECTION 2** Workmen on jobs located beyond zone one shall have travel expenses paid at the rate of FIFTEEN CENTS ($.15) PER MILE (ONE WAY DISTANCE TO BE MEASURED FROM THE INTERSECTION OF I-96 AND U.S. 23). Said travel time shall be paid for the return trip only, when the job is completed or when ordered to return by the employer. Workmen who quit shall not be entitled to any travel expenses.

**A.** ZONE TWO – a maximum radius of ONE HUNDRED AND FIFTY (150) miles travel expenses of THIRTY-SIX DOLLARS AND EIGHTY-NINE CENTS ($36.89) per day, provided the employee reports for work at the regular starting time the following day. Said subsistence shall be paid on a FIVE (5) day a week basis, all Holidays included.

**B.** ZONE THREE – All jobs located beyond ONE HUNDRED AND FIFTY (150) miles subsistence shall be paid o a SEVEN (7) Day week Holidays included. This subsistence shall be SIXTY DOLLARS ($60.00) per day on a SEVEN (7) day a week basis.

**C.** Subsistence shall be paid for each day whether worked or not provided however, the employee is available for work at the established starting time on the job each day.

**D.** Hourly travel pay will not be paid on National Maintenance Projects. On these projects the hourly travel will be paid added to the base rate.

14

# ARTICLE XV
## JOINT ADJUSTMENT BOARD AND
## GRIEVANCE ARBITRATION PROCEDURE

**SECTION 1**  Provided there are at least TWO (2) Employers who are signatories to this AGREEMENT, these Employers plus TWO (2) Union members appointed by the Union shall establish and constitute a Joint Adjustment Board. In the event a regular representative of a party is unavailable for a particular grievance, that party may appoint an alternate or may proportionally increase the voting strength of its remaining representatives such that both parties always have an equal number of votes on the board.

**SECTION 2**  Any dispute arising between the parties hereto relating to interpretation or application of this AGREEMENT shall be known as a grievance. It is mutually agreed that the employees, the Union and the Employer shall have the right and shall make every effort to address directly and with reasonable speed any grievance which might arise. Grievances shall first be referred to the Union Business Manager and the Employer involved for resolution between them. If any grievance or disagreement is not satisfactorily settled, either the Union or the Employer may submit the grievance in writing to the Joint Adjustment Board.

**SECTION 3**  The Joint Adjustment Board shall consider and decide all grievances, after the settlement of such disputes has been attempted at the Union level as provided above, the Joint Adjustment Board shall appoint a secretary. Upon the submission of any grievance to the Board, the secretary shall immediately notify the Board members in writing. Within FORTY-EIGHT (48) hours after receipt by the members of such notice of requested meeting, the Board shall meet to consider and decide the grievance submitted. Within FORTY-EIGHT (48) hours of such meeting the Board shall decide the grievance by majority vote. The time limits herein may be extended by the AGREEMENT of the parties. A decision by the majority of the board shall be final and binding.

**SECTION 4**  Any grievances between the Employer and the Union that have not been satisfactorily settled in accordance with the provisions of the proceeding SECTIONS of this AGREEMENT shall be submitted to an impartial arbitrator, to be settled through the procedures of the American Arbitration Association. The decision of the arbitrator shall be final and binding on the parties and judgment thereon may be entered in any Court having jurisdiction. Compensation and necessary expenses of the arbitration shall be borne equally by the parties.

# ARTICLE XVI
## STRIKE AND LOCK-OUTS

**SECTION 1**  Except as otherwise provided in this AGREEMENT the Union agrees that during the life of this AGREEMENT it will not authorize any strike, work stoppage or slow-down. The Union also reserves the right to strike in the event the Employer fails or refuses to submit to the grievance and arbitration procedure, or comply with a decision or award under ARTICLE XV, the Employer agrees that it will not lock-out any or all of its employees. It is understood, however, that to the extent this SECTION permits self-help by the Union, it shall not apply to ARTICLE XI, SECTION 2.

**SECTION 2**  In the event there is any unauthorized strike, slow-down, work stoppage or any other form of action which results in delay of any work, the Union agrees that if such action is unwarranted, it will use its best efforts to get the workmen back to work.

15

**SECTION 3**    With respect to the Union's obligation under SECTION 2 herein, it is agreed by and between the parties hereto that the Union's officers and agents shall not be liable in any manner whatsoever, either at law or in equity, for any unauthorized strike, slow-down, work stoppage or any other form of action which directly or indirectly results in delay or stoppage of work, nor shall the Union be held liable for any unauthorized act or activities of its officers, agents or members.

**SECTION 4**    No employee shall be disciplined, discharged or replaced because he honors or refuses to work behind a sanctioned picket line.

## ARTICLE XVII
## DISCHARGE OR LAY-OFF

**SECTION 1**    When an employee is requested to report to the Employer's Office by either the superintendent (or foreman on the job) at the start of or during the normal working hours for either discharge or lay-off, the Employer agrees to pay said employees a minimum of TWO (2) hours pay, plus travel pay (if said job is outside of the free zone) and also all actual hours he worked. If the Employer's Office is outside the free zone, the employee shall receive FOUR (4) hours of his minimum rate of pay, plus all actual hours worked

**SECTION 2**    If any employee is requested at the end of a working day not to report back to the same job and/or is not assigned to another job, he shall be considered laid-off due to lack of work.

**SECTION 3**    Employees who are either discharged or laid-off shall be given a separation slip (as furnished by the Union, and signed by any authorized personnel of the Employer) giving the reason for the action.

**SECTION 4**    If at some future date the Employer wishes to re-employ any former employee, this Union will refer said employee to the Employer, providing he/she is on the unemployed list in proper order.

**SECTION 5**    If an employee is absent from his job on THREE (3) consecutive working days without having notified his foreman or his Employer, the employee may be considered a voluntary quit.

**SECTION 6**    The Employer shall have the right to discharge or reprimand any employee for just cause, but this Union demands that a separation slip which is furnished by this Union be properly filled out giving full details for the discharge. This Union reserves the right to call all of its members from the employ of any Employer who has discharged or threatened any employee for Union activity or the refusal to work on straight time Saturday, Sundays, legal holidays, or days celebrated as such. Any employee shall have the right to know just why he was discharged, and this Union intends to protect that right.

**SECTION 7**    The Employer may, subject to the grievance procedure provided in the AGREEMENT, "during the the FIRST (1st) TWENTY-FOUR (24) hours of an unauthorized work stoppage" discipline (short of discharge) any employee who is at fault, after said TWENTY-FOUR (24) hours, in the event that the work stoppage has not ceased and he has checked the rest of his employees (who might be at fault), the Employer may then discipline or discharge said employee (subject to conditions in **SECTION 6** of this ARTICLE and the above mentioned grievance procedure). This shall constitute the Employer's sole and exclusive remedy under this AGREEMENT.

# ARTICLE XVIII
## GENERAL PROVISIONS

**SECTION 1**   The Employer agrees to furnish drinking ice water facilities and sanitary cups on all job sites.

**SECTION 2**   Employees shall be permitted to a TEN (10) minute break in work at the end of the SECOND (2nd) SIXTH (6th) and EIGHTH (8th) hours worked. Employees shall be permitted a THIRTY (30) minute lunch break.

    **A.**   Employees shall be permitted FIVE (5) minutes before lunch to clean up and they shall be permitted FIVE (5) minutes before quitting time to pick up their personal tools. No employee shall be permitted to leave the job site where he is working prior to the end of the work day without special permission from the job foreman.

**SECTION 3**   When employees are requested to report to the job they shall be there at the regular starting time of 8:00 a.m. (except summer hours) and stay there until the end of their EIGHT (8) hours. When requested to report first to any shop or warehouse, they are not required to report until the established starting time. Their pay shall start from said shop or warehouse, and continue on the job until the regular quitting time, providing that the employee does not have to report back, to where he started. If a member is driving a company truck, he shall be paid from shop to shop with Time and One-Half (1 ½) the hourly rate of pay if he works past the regular established quitting time.

# ARTICLE XIX
## APPRENTICESHIP

**SECTION 1**   All participants to the Apprentice Program must be registered with Roofers Local No. 70.

**SECTION 2**   Trainees shall be under the supervision of the Employer's journeyman at all times. No apprentice is permitted to work alone on any job in the jurisdiction of this Union. It is so stipulated and agreed that every Employer shall also cooperate in the rotating of apprentices in the various phases of the trade.

**SECTION 3**   Should any apprentice, after being accepted in the program, if he is unable to show any progress in his work, lacks the willingness to learn, the inability to function as a member of a roofing crew, or keep up with the other members of his class, he will be dropped from the apprentice program after being reviewed by the JAC.

**SECTION 4**   Apprentices may be used on a job at the rate of one apprentice for each TWO (2) journeyman, except where only TWO (2) men are required on a job where only TWO (2) men are required on a job when one may be an apprentice. They shall never be put in charge of work of any job, but shall always work under the supervision of at least ONE (1) journeyman until they have attained journeyman status.

**SECTION 5**   All contractors will abide by the rules set forth in the Apprenticeship Standards and any changes made by the Joint Apprenticeship Committee during the life of this AGREEMENT.

**SECTION 6**   The number of apprentices that may be used on any job shall be at the discretion of the Business Manager of the Union, as the journeyman on any job will have to control the number of apprentices that they can supervise and teach.

**SECTION 7**   The apprentice must fulfill apprentice requirements as determined by the Apprentice Committee and outlined by the Apprentice Standards approved by the U.S. Department of Labor, Bureau of Apprenticeship and Training.

**SECTION 8**   There is a Joint Committee composed of members from both the above mentioned parties that are the said sponsors, to be known as the Joint Apprentice Committee, who is authorized to supervise and enact the laws and regulations necessary to govern the training of apprentices as future roofers.

**SECTION 9**   All such applicants for apprenticeship training must be classed as probationary apprentices or pre-apprentices until enrolled in the apprenticeship program.

## ARTICLE XX
## PIECE-WORK TOOLS, CREW SIZE

**SECTION 1**   There shall be no work by the members or applicants of this Union on a per square or piece-work basis on any class of work covered by this AGREEMENT.

**SECTION 2**   A.   Journeyman roofers, 5th, 6th, and 7th class apprentices shall be required to furnish the following hand tools: hammer, knife, trowel, tape measure, steel roller and scissors. They shall not be required to furnish any form of transportation for men, materials, tools and/or equipment.

   B.   Apprentices 1st through 4th must have at least a hammer, knife and trowel.

   C.   All journeyman and apprentices must furnish and use proper clothing that meets Industry Safety Standards. It is understood, however, it shall be the responsibility of the Employer to insure the safety and health of its employees and compliance by them with any safety rules contained herein.

**SECTION 3**   When not applying roofing installation, but setting up jobs, closing down jobs or jobs where conditions warrant men on the job because of weather conditions or lack of material or various other reasons, the foreman and at least one journeyman roofer must be included among those remaining. If a steward is on the job, he shall have preference as the journeyman.

**SECTION 4**   No limitations shall be placed upon the amount of work which any employee shall perform during the working day, nor shall any rules, customs or practices be permitted which limit production or unnecessary increase in the time required to do the work.

## ARTICLE XXI
## MECHANICAL EQUIPMENT

**SECTION 1**   That no employee will be required to operate or work in the vicinity of any machinery or equipment unless the Union agrees that such machinery or equipment meets MIOSHA Standards. It is understood, however, that it shall be the responsibility of the Employer to insure compliance with such standards.

## ARTICLE XXII
## DISCLAIMER OF UNION LIABILITY

**SECTION 1**     In accordance with the requirements of the Occupational Safety and Health Act of 1970, it shall be the responsibility of the Employer to insure the safety and health of its employees and compliance by them with any safety rules contained herein or established by the Employer. Nothing in this AGREEMENT will make the Union liable to any employees or to any other persons in the event that injury or accident occurs. The employer agrees to hold the Union harmless for any act or omission hereunder.

**SECTION 2**     The Employer will not engage in any litigation against the Union on a subrogation theory or contribution theory, or otherwise, so as to obtain a money judgment in connection with any death or injury which occurs on the job sites covered by this AGREEMENT.

**SECTION 3**     The Employer agrees that any action taken by the Union, its officers and manager, in carrying out its obligations under SECTION 1 hereof, shall be without liability on the part of the Union's officers and agents. The Employer specifically waives any right of action at law or in equity that may have respecting such liability against the Union and its officers.

**SECTION 4**     It is agreed by and between the parties hereto that the Union's officers and managers, shall not be liable in any manner whatsoever either at law or in equity, for any unauthorized strike, slow-down or work stoppage or any other form of action which directly or indirectly results in delay or stoppage of work; nor shall the Union be liable for any unauthorized acts or activities of its officers, managers or members. The Union, however, will use its best efforts to prevent same.

## ARTICLE XXIII
## CASH PERFORMANCE BOND

**SECTION 1**     The Union may require a cash performance bond from any contractor in accordance with the following rules:

    **A.**    (PURPOSE OF BOND): To unsure payment of wages, fringe benefits, union dues, and all Employer contributions due this Union that is covered under this Collective Bargaining AGREEMENT.

    **B.**    The amount of the bond will not exceed FIVE THOUSAND DOLLARS ($5,000.00).

    **C.**    The Executive Board shall become the trustee of the deposited cash performance bond. The Board shall have the power to apply all, or any portion of the bond against delinquency which an Employer may incur.

    **D.**    The Employer may request reimbursement of the remaining bond money credited to the Employers account only after all wages, fringe benefits, and all required contributions due this Union are paid in full, if the project is completed and the Employer is no longer performing work in the Roofers Local No. 70 area.

    **E.**    The Executive Board shall administer all performance bond funds, draw up a proper trust agreement, determine where funds shall be held and shall devise forms and procedures for withdrawing money from the fund.

# Roofers Union Local # 70

## Ann Arbor Area Pay Scale
### Effective June 1, 2008 – May 31, 2009

| Rate Class | Rate | Travel Pay | Organize | Vacation | Insurance | Pension | Apprentice | Wage & Benefit Total |
|---|---|---|---|---|---|---|---|---|
| Foreman Lg Crew | $30.08 | $2.00 | $0.25 | $2.50 | $6.20 | $5.50 | $0.40 | $46.93 |
| Foreman Sm Crew | $28.58 | $2.00 | $0.25 | $2.50 | $6.20 | $5.50 | $0.40 | $45.43 |
| Journeyman | $27.08 | $2.00 | $0.25 | $2.50 | $6.20 | $5.50 | $0.40 | $43.93 |
| 7th Class | $21.96 | $2.00 | $0.25 | $2.50 | $6.20 | $5.50 | $0.40 | $38.81 |
| 6th Class | $20.84 | $2.00 | $0.25 | $2.50 | $6.20 | $4.45 | $0.40 | $36.64 |
| 5th Class | $19.71 | $2.00 | $0.25 | $2.50 | $6.20 | $4.43 | $0.40 | $35.49 |
| 4th Class | $18.00 | $2.00 | $0.25 | $2.50 | $6.20 | $4.40 | $0.40 | $33.75 |
| 3rd Class | $16.15 | $2.00 | $0.25 | $2.50 | $6.20 | $4.35 | $0.40 | $31.85 |
| 2nd Class | $14.63 | $2.00 | $0.25 | $2.50 | $6.20 | $4.30 | $0.40 | $30.28 |
| 1st Class | $13.37 | $2.00 | $0.25 | $2.50 | $6.20 | $4.25 | $0.40 | $28.97 |
| Pro App | $12.00 | $2.00 | $0.25 | $0.00 | $5.45 | $3.75 | $0.40 | $23.85 |

## EMPLOYEE DEDUCTIONS

HOURLY DUES.................$0.75

ROOFERS UNION LOCAL # 70 INITIATION (IF APPLICABLE) $5.00 PER DAY

NEW HIRES (NO PREVIOUS UNION HOURS) DO NOT RECEIVE MONTHLY VACATION FOR THE 1ST 1000 HOURS PROBATIONARY DO NOT RECEIVE PENSION OR INSURANCE FOR THE FIRST 30 DAYS

*****FOREMAN LG CREW – CREW OF 6 OR MORE****

Organizing is added to the base rate, taxed, and then deducted.
Vacation pay is added to the base rate taxed and then deducted.
$2.50 per hour Vacation will be paid on monthly fringe report.

# Roofers Union Local # 70
## Individual
## Ann Arbor Area Pay Scale
## Effective June 1, 2006 – May 31, 2007

| Rate Class | Rate | Travel Pay | Organize | Vacation | Insurance | Pension | Apprentice | Wage & Benefit Total |
|---|---|---|---|---|---|---|---|---|
| Foreman Lg Crew | $28.08 | $2.00 | $0.25 | $2.50 | $5.45 | $5.25 | $0.40 | $43.93 |
| Foreman Sm Crew | $26.58 | $2.00 | $0.25 | $2.50 | $5.45 | $5.25 | $0.40 | $42.43 |
| Journeyman | $25.08 | $2.00 | $0.25 | $2.50 | $5.45 | $5.25 | $0.40 | $40.93 |
| 7th Class | $21.96 | $2.00 | $0.25 | $2.50 | $5.45 | $5.25 | $0.40 | $37.81 |
| 6th Class | $20.84 | $2.00 | $0.25 | $2.50 | $5.45 | $4.20 | $0.40 | $35.64 |
| 5th Class | $19.71 | $2.00 | $0.25 | $2.50 | $5.45 | $4.18 | $0.40 | $34.49 |
| 4th Class | $18.00 | $2.00 | $0.25 | $2.50 | $5.45 | $4.15 | $0.40 | $32.75 |
| 3rd Class | $16.15 | $2.00 | $0.25 | $2.50 | $5.45 | $4.10 | $0.40 | $30.85 |
| 2nd Class | $14.63 | $2.00 | $0.25 | $2.50 | $5.45 | $4.05 | $0.40 | $29.28 |
| 1st Class | $13.37 | $2.00 | $0.25 | $2.50 | $5.45 | $4.00 | $0.40 | $27.97 |
| Pro App | $12.00 | $2.00 | $0.25 | $0.00 | $4.70 | $3.50 | $0.40 | $22.85 |

## EMPLOYEE DEDUCTIONS
### HOURLY DUES.....................$0.75
ROOFERS UNION LOCAL # 70 INITIATION (IF APPLICABLE) $5.00 PER DAY

NEW HIRES (NO PREVIOUS UNION HOURS) DO NOT RECEIVE MONTHLY VACATION FOR THE 1ST 1000 HOURS
PROBATIONARY DO NOT RECEIVE PENSION OR INSURANCE FOR THE FIRST 30 DAYS
*****FOREMAN LG CREW – CREW OF 6 OR MORE****

Organizing is added to the base rate, taxed, and then deducted.
Vacation pay is added to the base rate taxed and then deducted.
$2.50 per hour Vacation will be paid on monthly fringe report.

EMPLOYEES WHO WERE 6TH CLASS APPRENTICES PRIOR TO JULY 1, 2006 WILL NOT HAVE TO MOVE TO 7TH CLASS PRIOR TO BECOMING A JOURNEYMAN.

**SECTION 2**    With regard to the Roofers Union Local No. 70 Pension Trust Fund, Roofers Union Local No. 70 Insurance Fund, Roofers Union Local No. 70 Apprentice Fund and Roofers Union Local No. 70 Vacation Fund the Employer shall promptly furnish to the Union or its representatives or the Trustees or their agents, on request, any and all records of its employees concerning classification of such employees, their name, social security numbers, amount of wages paid and hours worked and any other payroll records and information that the Union or the Trustees funds named above, and for no other purpose. The Union or its payroll books and records of the Employer whenever such examination is deemed necessary or advisable by the Union or the Trustees in connection with the proper administration of the above named Trust Funds.

A.    In the event the Employer does not comply with the provisions in SECTION 2, above within SEVENTY-TWO (72) hours after having been notified by certified mail of the Union's or the Trustee's desire to audit the Employer's books, the Union shall have the right to strike.

B.    In the event that the Employer has failed to make proper contributions to the trust funds named in SECTION 2 above, the Employer agrees to accept financial responsibility for the cost of the audit involved in discovering such shortage or discrepancy; and the cost to the Union or the Trustee's of collection, including the attorney fees.

C.    In the event that the Employer does not make full payment of any shortage or delinquency in contribution payments to the funds named in SECTION 2 above, within SEVEN (7) days, the Union shall have the right to strike.

D.    The amount of hourly contributions may change periodically by a vote of the Union membership.

E.    If an audit proves that the contractor has willfully evade paying the proper money into any of the Local 70 Funds, the bonds may be cashed to pay for the loss to the funds.

F.    Contractors who keep their records outside the state of Michigan may either produce the books to the auditor in Michigan or pay all expenses for he auditor to travel to the appropriate state to perform the audit.

G.    Any contribution to any of the Trust Funds named herein which is delinquent by more than FIVE (5) days from the deposit due date shall be subject to a delinquent charge of TEN PERCENT (10%) of the amount of delinquent contribution. Any contribution that is not paid to the respective Trust Fund within FIVE (5) days of the deposit due date shall be subject to an interest charge to be computed at the highest legal rate from the due date until the date received by the Trust Fund.

E.    The deposit due date for monthly contributions for all the Trust Funds named in this AGREEMENT shall be no later than the TENTH (10th) day of each month for the employee hours worked the preceding month. All monthly contributions shall be made to or as the Union may direct. The Union will notify the Employer where to make contributions to. All contributions shall be accompanied by a completed, signed and dated monthly contractor payroll report (a copy of which is attached hereto).

1.    Any dispute regarding bonds, contribution, penalties or interest shall be resolved by the Joint Adjustment Board, provided however that payment of the contribution, penalty and Interest must be made prior to appeal.

2. Penalty and interest will be billed to the Employer by the Trust Fund Administrator for payment.

3. All penalties, interest and cost of collection shall be reimbursed to the respective Trust Funds based on the proportion of contributions due each Trust Fund.

4. Employer agrees to make contributions to various Trust Funds for all employees from the FIRST (1st) day of employment.

5. The amount paid into each fund may be changed by the Union membership, however money moved from a non-tax status to a taxable status must be approved by the contractors.

# ARTICLE XXIV
## VACATION FUND

**SECTION 1**   The Employer agrees to all the terms and conditions of Roofers Union Local No. 70 Vacation Trust Fund and in accordance therewith agrees to contribute by the TENTH (10th) day each month TWO DOLLARS and FIFTY cents ($2.50) for each hour worked by the employee in the preceding month. Contributions to the Trust Fund shall be in accordance with ARTICLE XXIII. The contribution of TWO DOLLARS and FIFTY cents($2.50) per hour worked is in addition to the wage rates agreed to in ARTICLE XXVIII and shall be after all of payroll tax withholdings required to be made by the Employer.

**SECTION 2**   Failure to comply fully with the provisions of the above SECTION could result in the removal of all eligible employees affected by this AGREEMENT who are working for the said Employer, including any employees from a sister local, who might be on that job, until such tie as all payments have been made, including the stated amount of late charges and interest.

**SECTION 3**   It is agreed that these Employer contributions are over and above the scheduled employee wage and/or expenses provided in this AGREEMENT.

**SECTION 4**   The Trustees of this Union, composed of members from both parties to this AGREMENT, shall have the sole determination as to the methods employed to assure all eligible workers the sum due them will be paid the FIRST (1st) week in December each year.

**SECTION 5**   Vacation pay shall be included in the gross pay of the workmen covered by this AGREEMENT. This gross amount shall be taxed then deducted, and the full amount of TWO DOLLARS and FIFTY cents ($2.50) shall be sent to the Union.

**SECTION 6**   In the event the Employer shall become delinquent in or fail to make the payment of contributions as required herein, such delinquency or failure shall be subject to the grievance and arbitration procedure of ARTICLE XV, at the option of the Union only. The Union shall have the option to submit such delinquency of failure to the grievance and arbitration procedure pursuant to ARTICLE XV or, in the alternative, shall have the right to consider such delinquency or failure as an immediate breach of this Collective Bargaining AGREEMENT and to strike until all delinquent payments are paid in full.

## ARTICLE XXV
## INSURANCE FUND

**SECTION 1**    The Employer agrees to be bound by the terms and conditions of Roofers Union Local No. 70 Insurance Fund and in accordance therewith shall contribute (INSERT APPROPRIATE AMOUNT) by the TENTH (10th) day of the month for each hour worked by the employee in the preceding month. Contributions to the Trust Fund shall be in accordance with ARTICLE XXIII.

**SECTION 2**    If the Employer fails to comply with the provisions of SECTION 1 of this ARTICLE, this AGREEMENT at the option if the Union shall become null and void and result in removal of all eligible employees affected by this Collective Bargaining AGREEMENT.

**SECTION 3**    It is agreed that these Employer contributions are over and above the scheduled employee wage and/or expenses. Employer shall be liable for all damages direct and indirect caused by any loss of benefits due to its failure to make contributions as required herein.

## ARTICLE XXVI
## PENSION FUND

**SECTION 1**    The Employer agrees to be bound by the terms and conditions of Roofers Union Local No. 70 Pension Trust Fund and in accordance therewith shall contribute to the Trust Fund (insert appropriate amount ) by the TENTH (10th) of each month for each hour worked by all the Employees in the preceding month for each month. Contributions to the Trust Fund shall be in accordance with ARTICLE XXIII.

**SECTION 2**    Failure to comply fully with the provisions of the above section could result in the removal of all eligible employees affected by this AGREEMENT who are working for the said Employer, including any employees from a sister local who might be on the job, until such time as all payments have been made, including the stated amount of liquidated damages that is listed on said forms.

**SECTION 3**    It is agreed that the Employer contributions are over and above the scheduled employee wage and/or expenses provided for in this AGREEMENT.

## ARTICLE XXVII
## APPRENTICE FUND

**SECTION 1**    The Employer agrees to be bound by all terms and conditions of Roofers Union Local No. 70 Apprenticeship Trust Fund and in accordance therewith agrees to contribute by the TENTH (10th) day of each month (insert appropriate amount) per hour of each worked by the employees for the preceding month. Contributions to the Trust Fund shall be in accordance with ARTICLE XXIII.

**SECTION 2**    In the event the Employer becomes delinquent in or fails to make the payment of contributions as required herein, such delinquency shall be subject to the grievance and arbitration procedure of ARTICLE XV, at the option to consider such delinquency or failure as an immediate breach of this Collective Bargaining AGREEMENT and to strike until all delinquent payments are paid in full.

# ARTICLE XXIX
## OVERTIME, HOLIDAYS, ETC.

**SECTION 1**   It is hereby agreed that all labor in connection with incidental to work covered by this AGREEMENT shall be performed within the hours specified in ARTICLE V, SECTION 1. In all cases where work is permitted outside the regular working hours, Time and One-Half (1 ½) shall be paid for each hour worked.

**SECTION 2**   For the purpose of this AGREEMENT, legal holidays shall include: INDEPENDCE DAY, LABOR DAY, THANKSGIVING DAY, CHRISTMAS EVE, CHRISTMAS DAY, NEW YEARS DAY, AND MEMORIAL DAY.

**SECTION 3**   If any of the above holidays fall on a Saturday, the Friday shall be considered the holiday, or if any of the above holidays fall on a Sunday, Monday shall be considered the holiday, and if work is performed the rate shall be Double Time (2x).

**SECTION 4**   Holiday work will not be permitted unless a written request is made by the Employer TWO (2) days prior to such holiday and said request is granted by the Union. Sunday work will not be permitted unless a written request for such work is presented to the Union on the Friday preceding the day requested. In emergencies, a telephone call to the Union Office during its regular business hours for permission will suffice.

**SECTION 5**   The Double Time rate for all employees shall be paid for all hours worked on Sundays and holidays.

**SECTION 6**   The Employer agrees that in the event Sunday or holiday work is requested on a job in operation, the men assigned to the job during the week shall have preference on all Saturday, Sunday, holiday or overtime work.

**SECTION 7**   The Time and One-Half (1 ½) rate shall be paid for all Saturday work from MARCH 1st through November 30th. . The Straight Time hourly rate shall be paid for Saturdays between DECEMBER 1st through FEBRUARY 28th. Saturday Straight Time work shall be on a completely voluntary basis.

## ARTICLE XXX
## CHECK-OFF DUES

The Employer agrees to deduct Union membership dues for each hour worked from the pay of each employee who executes the following authorization for check-off dues form:

### AUTHORIZATION FOR CHECK-OFF DUES

I hereby authorize and direct the Employer to deduct from my pay Union hourly dues in the amounts fixed in accordance with By-Laws of Local Union No.70, and pay same to said Union in accordance with the terms of the Bargaining AGREEMENT between the Employer and the Union.

This authorization will be irrevocable for a period of one year from the date hereof or until the termination date of said AGREEMENT, whichever occurs sooner: and I agree that this authorization shall be automatically renewed and irrevocable for successive periods of one year, unless revoked by written notice to you and the Union TEN (10) days prior to the expiration of each year period, or of each applicable Bargaining AGREEMENT between the Employer and the Union, whichever occurs sooner.


_____

Signature of Employee


_____

DATE


The effective date, the hourly dues deducted shall commence with the FIRST (1st) hour worked on or after June 1st, 2006.

# ARTICLE XXXI
## MISCELLANEOUS

This Collective Bargaining AGREEMENT represents the entire AGREEMENT of the parties and any future modification or amendment to this AGREEMENT may only be made in writing signed by the parties.

# ARTICLE XXXII
## FAVORED NATION

The Union will not extend or permit in any company or association within the jurisdiction of this AGREEMENT, any base rates, fringe benefit cost or working conditions more favorable to an Employer than those contained in this AGREEMENT, unless same be granted to all signatory contractors of Local No. 70 J.L.W. Area. The Union will report to all signatory contractor any new conditions, rates or fringes differing from those expressed in this AGREEMENT.

Project Agreements negotiated by building trade organizations are excluded from the Favored Nation clause.

# ARTICLE XXXIII
## DEKLEWA WAIVER

...the individual Employer waives any right that he or it may have to terminate, abrogate, repudiate or cancel this AGREEMENT during its term, or during the term of any future modifications, changes amendments, supplements, extensions, or renewals of or to said MASTER AGREEMENT: or to file or process any petition before the National Labor Relations Board seeking such termination, abrogation, repudiation or cancellation.

# ARTICLE XXXIV
## TERMINATION OF AGREEMENT

This AGREEMENT shall be in full force and effect from June 1, 2006 and including MAY 31, 2009 and shall continue in full force and effect from year to year thereafter unless written notice of desire to cancel or terminate the AGREEMENT is served by either party upon at least SIXTY (60) days prior to the date of expiration.

## ARTICLE XXXV
## SIGNATURES

IN WITNESS AND TESTIMONY on the provisions and terms mutually agreed upon and specified herein, the duly authorized officers and representatives of both parties hereby affix their signatures and seals.

United Union of Roofers, Waterproofers and Allied Workers, Local Union No. 70 of Ann Arbor, Michigan.

UNION OF ROOFERS,
WATERPROOFERS AND
ALLIED WORKERS,
LOCAL NO. 70

THOMAS W. CURRY SR.
BUSINESS MANAGER

HERBERT TACKETT
PRESIDENT

JOHN TACKETT
VICE-PRESIDENT